No. 13-30010

In the United States Court of Appeal
For the Fifth Circuit

JOHNSTON & JOHNSTON
*Plaintiff-Appellee,*

**v.**

CONSECO LIFE INSURANCE COMPANY
*Defendant-Appellant.*

On Appeal from the United States District Court
For the Western District of Louisiana
No. 3:12-cv-01552

BRIEF OF APPELLEE,
JOHNSTON & JOHNSTON

Charles W. Herold, III
G. Adam Cossey
Hudson, Potts & Bernstein, LLP
1800 Hudson Lane, Suite 300
Post Office Drawer 3008
Monroe, Louisiana 71210-3008
Telephone – 318/388-4400
Facsimile – 318/322-4194

Attorneys for Johnston & Johnston

## CERTIFICATE OF INTERESTED PARTIES

Pursuant to Fed. R. App. 26.1 and 5th Cir. R. 28.2.1, Appellee, Johnston & Johnston provides the following certificate of interested persons:

1.    Johnston & Johnston certifies that it is a privately held Louisiana corporation and that it is not owned by any parent corporation and no publicly held corporation owns 10% or more of its stock.

2.    Johnston & Johnston further certifies that following entities and individuals have an interest in the outcome of this case:

      a)  Johnston & Johnston: Plaintiff-Appellee

      b)  John Bishop Johnston, III: Partner in Johnston & Johnston

      c)  Jay Dixon Johnston: Partner in Johnston & Johnston

      d)  Nina Marie Johnston Pate: Partner in Johnston & Johnston

      e)  Mary Ann Johnston Currie: Partner in Johnston & Johnston

      f)  Jo Elizabeth Johnston: Partner in Johnston & Johnston

      g)  Charles W. Herold: Counsel for Johnston & Johnston

      h)  G. Adam Cossey: Counsel for Johnston & Johnston

      i)  Hudson, Potts & Bernstein, LLP: Counsel for Johnston & Johnston

      j)  Conseco Life Insurance Company ("Conseco"): Defendant-Appellant

k)  CNO Financial Group, Inc.: Parent company of Conseco

l)  Subsidiaries of CNO Financial Group, Inc.: Publicly-traded parent company of Conseco

m) RGA Reinsurance Company: Reinsurer of the subject insurance policy

n)  Honorable Robert G. James: Presiding Judge rendering the decision in the district court below.

## STATEMENT REGARDING ORAL ARGUMENTS

Johnston & Johnston does not feel that oral arguments would be beneficial or necessary. The present case involves the application of a single Louisiana statute, easily interpreted and applied by the district court pursuant to Louisiana Supreme Court jurisprudence. As such, the record and briefs adequately address the issue before the court. *See* Fed. R. App. P. 34(a)(2)(C).

# **TABLE OF CONTENTS**

STATEMENT OF THE CASE................................................................1

STATEMENT OF THE FACTS ..........................................................4

    A. Flexible premium life insurance policies ........................................4

    B. The policy at issue ...................................................................5

    C. Conseco's notice practices.........................................................7

SUMMARY OF THE ARGUMENT ....................................................8

STANDARDS OF REVIEW .............................................................10

APPLICABLE LAW ......................................................................12

    A. Applicable statute ..................................................................12

    B. Construction and application ....................................................12

    C. Purpose................................................................................13

ESSENTIAL TERMS AND DEFINITIONS ........................................13

    A. "Payable" is defined as the date a premium is "due" .....................13

    B. "Grace period" is defined as a period of time <u>after</u> a payment is due...........15

    C. Lapse ..................................................................................16

DISCUSSION ..............................................................................17

    A. The district court correctly ruled that the operative "due date" for notice was December 12, 2010.......................................................17

        1. The operative date for notice is the date a premium is "due" .................17

        2. The district court correctly ruled that the premium became "due on December 12, 2010...................................................................18

        3. The district court correctly ruled that "grace notices" provided after the policy had already lapsed into a "grace period" cannot strictly comply with LSA-R.S. 22:905 ...............................................................19

        4. The district court's ruling is consistent with the applicable rules of statutory construction ...........................................................22

5. The district court's ruling is the only conclusion that would property achieve the purpose of LSA-R.S. 22:905 .................................................23

B. Conseco's arguments are illogical, unpersuasive and contrary to law ..........24

1. The foundation of Conseco's entire brief is based upon the erroneous argument that "grace notices" can satisfy the requirements of LSA-R.S. 22:905 ....................................................................................................25

2. Conseco's argument that premiums were "optional" until the expiration of the grace period is unpersuasive and contrary to applicable law .........26

3. Conseco's argument that premiums were not required to be paid by the policy is erroneous..................................................................................28

4. Even accepting Conseco's arguments as true, the notice provided was still untimely ............................................................................................29

5. Conseco's argument that the "grace period" extended the time for statutory notice is legally incorrect ........................................................30

6. Conseco erroneously describes and relies upon the district court opinion of *Turner v. OM Financial Life Ins. Co.*....................................................31

7. Conseco's use of the term "premium due date" in its untimely "grace notices" is irrelevant ...............................................................................32

8. Conseco's argument that the court's interpretation would lead to "absurd consequences" has been waived and is unpersuasive .............................32

9. The trial court's interpretation does not render any portion of LSA-R.S. 22:905 meaningless or create a conflict with other laws ........................37

10. Conseco's appeal misunderstands the district court's statement regarding the application of § 8511 .........................................................................38

C. Johnston & Johnston was entitled to pay its premiums up-to-date and maintain coverage because the defective termination was "illegal and of no effect"...........................................................................................................39

1. Conseco's failure to provide proper notice rendered the termination a nullity and the policy continued under its previous terms ......................40

2. Refusing to accept premiums during the automatic one-year extension subverts the purpose of LSA-R.S. 22:905 ..............................................40

3. The cases cited by Conseco in support of its argument are inapplicable.42

4. Conseco fails to address portions of the record establishing that Johnston & Johnston sought to pay the premiums up-to-date during the one-year extension ...............................................................................44

D. The district court did not err in denying Conseco's Motion to Alter or Amend Judgment ........................................................................44
   1. Conseco's Rule 59(e) motion improperly sought to raise untimely arguments and re-litigate issues that had already been decided by the district court ...............................................................................45
   2. Conseco was not prejudiced by the court's ruling that December 12, 2010 was the operative date for notice ...........................................46

E. Amicus Curiae's brief should be disregarded because it improperly asks the court to modify the clear language of LSA-R.S. 22:905 to serve its policy concerns ...........................................................................48
   1. The policy opinions of a private professional organization do not override the unambiguous language of a statute enacted by the Louisiana legislature.................................................................................48
   2. The present case is not the appropriate forum to effectuate the policy changes ACLI advocates ...............................................................49
   3. Alleged "difficulties" in complying with LSA-R.S. 22:905 do not justify the court's amendment of the statute's clear and unambiguous terms ....50
   4. ACLI concedes that the district court's interpretation is supported by legal authority .................................................................................51
   5. ACLI's reliance on a New York statute is unpersuasive .........................51

CONCLUSION ...........................................................................................52

CERTIFICATE .........................................................................................53

CERTIFICATE OF COMPLIANCE ......................................................................54

## TABLE OF AUTHORITIES

### Cases

*Matter of Advance Glove Mfg. Co.,*
   761 F.2d 249 (6th Cir. 1985) ...............................................20, 30, 32

*In re: Advanced Sys. Int'l, Inc.*
   234 F. Appx. 398 (6th Cir. 2007) .................................................20

*Bailey v. Domino's Pizza, LLC,*
   867 F.Supp. 835 (E.D. La. 2012)...........................................45, 46

*Boring v. Louisiana State Ins. Co.,*
   97 So. 856 (La. 6/30/23) ......................... 13, 14, 19, 20, 23, 24, 27, 30, 32, 40

*Centennial Broad, LLC v. Burns,*
   433 F.Supp. 2d 730 (W.D. Va. 2006)...........................................45

*Chamberlain v. State, through DOTD,*
   624 So.2d 874 (La. 1993) ............................................................35

*Dillon v. Select Portfolio Servicing,*
   630 F.3d 75 (1st Cir. 2011).........................................................34

*Durio v. Metro Life Ins. Co.*
   653 F.Supp. 2d 656 (W.D. La. 2009) ...........................................43

*First Am. Bank & Trust of LA v. Texas Life Ins. Co.,*
   10 F.3d 332 (5th Cir. 1994) ................................. 13, 14, 22, 23, 24, 30, 41, 43

*Ford Motor Credit Co. v. Bright*
   34 F.3d 322 (5th Cir. 1994) ........................................................11

*Holland v. Big River Minerals Corp.,*
   181 F.3d 597 (4th Cir. 1999) .....................................................34

*Kleinsmith v. Shurtleff,*
   571 F.3d 1033 (10th Cir. 2009) ..................................................34

*LeClerc v. Webb,*
   419 F.3d 405 (5th Cir. 2005) .....................................................33

*Lemoine v. Security Indus. Ins. Co.,*
    569 So.2d 1092 (La. App. 3rd Cir. 11/07/90)................................................12

*Lester v. Aetna Life Ins. Co.,*
    295 F.Supp. 1208 (W.D. La. 1968) .............................................12, 13, 23, 24

*Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.,*
    630 So.2d 759 (La. 1/14/94) ..................................................................12, 22

*Mungo v. Taylor,*
    355 F.3d 969 (7th Cir. 2004) ...........................................................................34

*Oschner v. Ideal Life Ins. Co.,*
    945 So.2d 128 (La. App. 4th Cir. 11/08/06).............................................42, 43

*Pacific Ins. Co. v. American Nat. Fire Ins. Co.,*
    148 F.3d 396 (4th Cir. 1998) .........................................................................45

*Pittston v. Ultramar America Ltd v. Allianz Ins. Co.,*
    124 F.3d 508 (3rd Cir. 1997) .........................................................................34

*Quest Med., Inc. v. Apprill,*
    90 F.3d 1080 (5th Cir. 1996) .........................................................................46

*Simon v. United States,*
    891 F.2d 1154 (5th Cir. 1990) .......................................................................45

*Singleton v. Wulff,*
    428 U.S. 106 (1976)........................................................................................33

*Soloco, Inc. v. Dupree,*
    707 So.2d 12 (La. 1/21/98) .......................................................................35, 36

*Statsan, Inc. v. Logal*
    49 Fed. Appx. 917 (5th Cir. 2002)..................................................................11

*Templet v. HydroChem, Inc.,*
    367 F.3d 473 (5th Cir. 2004) ............................................................10, 11, 45

*Turner v. OM Financial Life Ins. Co.,*
    822 F.Supp. 2d 633  (W.D. La. 2011) ...........................................12, 31, 35

*Vining v. State Farm Ins. Co.,*
    409 So.2d 1306 (La. App. 2nd Cir. 1/25/81) ...................................................12

*Waltman v. Int'l Paper Co.*,
    875 F.2d 468 (5th Cir. 1989) ...........................................................................45

## Statutes & Regulations

LA. ADMIN. CODE TIT. 37 § 8511 (A)(6)(b)..............................................................17

## Secondary Sourses

BLACK'S LAW DICTIONARY 717 (8th Ed. 2004).........................................................15

COUCH ON INSURANCE § 76:57 ............................................................20, 27, 30, 32

MERRIAM-WEBSTER DICTIONARY OF LAW (13th Ed. 2011) ....................................16

MERRIAM-WEBSTER ONLINE DICTIONARY ...............................................................15

OXFORD AMERICAN DICTIONARY (3rd Ed. 2010) .....................................................14

OXFORD ENGLISH DICTIONARY ONLINE ..................................................................15

## **ISSUES ON APPEAL**

1.      Whether "grace notices" sent <u>after</u> the insurance policy had lapsed and fallen into a "grace period" strictly comply with LSA-R.S. 22:905's requirement that notice be provided 15-45 days <u>before</u> the premium is due.

2.      Whether the district court correctly found that cancellation that does not meet the requirements of LSA-R.S. 22:905 is "illegal and of no effect" such that the insured is entitled to pay the premiums current and maintain coverage during the one year automatic extension of coverage.

3.      Whether the district court abused its direction in refusing to re-litigate the case or consider new legal arguments when it denied Conseco's Rule 59(e) Motion to Alter or Amend Judgment.

## STATEMENT OF THE CASE

The present lawsuit was filed by plaintiff-appellee, Johnston & Johnston, on June 7, 2012.  [R. 7]  Johnston & Johnston's Complaint alleged that defendant, Conseco Life Insurance Company ("Conseco"), failed to comply with the statutory notice requirements of LSA-R.S. 22:905, which prohibits cancellation of a life insurance policy without sending written notice of the amount owed 15-45 days before the premium is due.  [R. 10, ¶ 20]  The complaint sought a declaratory judgment that the notices provided by Conseco failed to comply with LSA-R.S. 22:905 and specific performance requiring Conseco to accept payment of premiums necessary to maintain the insurance policy.  [R. 11-12]

On July 9, 2012, Conseco filed a "Motion to Dismiss, or in the alternative, Motion for Summary Judgment."  [R. 22]  In its motion, Conseco recognized that there were no genuine issues of fact.  [R. 23, ¶ 3]  Instead, resolution hinged entirely upon the legal determination of whether "grace notices" satisfied the requirements of LSA-R.S. 22:905.  [R. 23-25]  Conseco based its motion on two arguments: (1) that its "grace notices" satisfied LSA-R.S. 22:905; and (2) that even if the "grace notices" were defective, LSA-R.S. 22:905 only provided an additional year of coverage and Conseco was not required to accept premium payments paid during that year.  [R. 25, ¶ 8]  Conseco filed a brief in support of its motion in which it alleged that the "grace notices" were sufficient to comply with LSA-R.S.

22:905 because the policy allowed extra time to pay the premiums until the end of the "grace period." [R. 37-44] However, it is important to note that even Conseco conceded in its brief that *previous premiums paid by Johnston & Johnston only kept the policy in force through December 12, 2010.* [R. 37 ("Plaintiff paid a premium of $38,778.46 on October 6, 2010, which kept the policy in force until December 12, 2010.")]

On July 31, 2012, Johnston & Johnston filed its own Motion for Summary Judgment. [R. 203] Like Conseco's motion, Johnston & Johnston urged that there were no genuine issues of material fact and the case rested upon the court's legal determination of the application of LSA-R.S. 22:905 to the "grace notices." [R. 203, ¶ 3; R. ¶ 5] The basis of Johnston & Johnston's motion was that the annual premium notice was defective because it stated the incorrect amount (which Conseco does not dispute) and that the "grace notices" were untimely because they were sent after the policy was already past-due and had fallen into a "grace period." [R. 204, ¶ 8 & 9] By definition, a "grace notice" sent after the policy had already lapsed could not meet LSA-R.S. 22:905's requirement that notice be provided prior to the date the premium is due. [R. 204, ¶9] Johnston & Johnston's motion also included the affidavit testimony of its in-house accountant, Ralph Speirs, Jr., and documentary evidence establishing its attempts to pay the

premiums current and maintain coverage during the one year following cancellation of the policy. [R. 233-36]

Both parties filed oppositions to the adverse party's motion for summary judgment. [R. 240 & 347] Johnston & Johnston also filed a reply brief responding to Conseco's opposition. [R. 367] The central issue in these supplemental briefs was the sufficiency of "grace notices." Conseco maintained that since it would continue to accept payments after the lapse of the policy, notice should be calculated based upon the end of the "grace period." Johnston & Johnston responded that "grace notices," by their very definition, were insufficient because the "grace period" did not begin until the premium was already past-due. [R. 367-71] As such, regardless of the date the premium was due, a "grace notice" could not strictly comply with LSA-R.S. 22:905. [R. 367-70]

On October 11, 2012, the district court issued a memorandum ruling denying Conseco's motion and granting summary judgment in favor of Johnston & Johnston. [R. 385-391] In its ruling, the district court found that the operative date for notice was December 12, 2010, the date on which previously paid premiums were no longer sufficient to maintain coverage, necessitating payment of an additional premium. [R.389-91] Moreover, grace notices, by their very definition, are not sent until after the policy is already past-due and constitute extra protection for the insured, but do not change the applicable due date under LSA-R.S. 22:905.

[R. 390]  Judgment consistent with the court's memorandum ruling was entered on that same day.  [R. 392]

On November 6, 2012, Conseco filed a Rule 59(e) Motion to Alter or Amend Judgment.  [R. 397]  On November 21, 2012, Johnston & Johnston filed an opposition to Conseco's Rule 59(e) motion, pointing out that the arguments raised by Conseco were both meritless and untimely, as they were never raised prior to the court's judgment.  [R. 433]  On December 13, 2012, the district court entered a memorandum ruling denying Conseco's Rule 59(e) motion on the basis that Conseco sought to improperly re-litigate the case and that several of its arguments were untimely.  [R. 461-66]  This appeal followed.

## STATEMENT OF THE FACTS

**A.      Flexible premium life insurance policies.**

The subject insurance policy was a "flexible premium adjustable life insurance policy."  With this type of policy, the beneficiary chooses how they will be billed (i.e. monthly, annually, etc.), and is free to make payments of varying frequency and amounts, so long as there is sufficient cash value in the policy or sufficient premium payments are made to cover the deducted "cost of insurance." [R. 237]  As correctly pointed out by Conseco, "a flexible premium policy will remain in force only as long as there is sufficient cash value in the policy to cover the monthly cost of insurance and expense charge deductions."  [R. 48, ¶ 3; R. 56 ¶

5, erroneously labeled ¶ 3]  Thus, it is possible that coverage will expire prior to the maturity date shown where premiums are insufficient to continue coverage to such date.  [R. 48, ¶ 3]  At such time, additional premiums will be necessary to maintain coverage.

Under the terms of this particular policy, the insurer was required to provide an annual report showing the premiums paid, expense charges, interest credited, mortality charges, outstanding loans, current cash value, cash surrender value, and all charges since the last report.  [R. 337]  However, since the "cost of insurance" and deductions varied, the beneficiary would not know precisely when the policy's cash value would be depleted until notified by the insurer that additional premiums were necessary.

## B.    The policy at issue.

This particular "flexible premium insurance policy" was purchased by Johnston & Johnston and insured the life of Mary Ann D. Johnston.  [R. 212]  The policy was purchased on April 12, 1988, when Mrs. Johnston was 68 years old. [R. 212; R. 55 ¶ 3]   Johnston & Johnston selected annual premiums but, as discussed above, was free to make payments of varying frequency and amounts to maintain sufficient cash value to cover the cost of insurance.  [R. 212; R. 56 ¶ 4] From the policy's inception, Johnston & Johnston has paid $1,233,195.97 in premium payments.  [R. 394 ¶ 32]

On September 21, 2010, Conseco sent a "Notice of Premium Due" identifying the annual premium due date of October 12, 2010 and stating that the "amount due" was $32,451.00. [R. 212; R. 171-72] The next notice sent by Conseco was a "grace notice" sent on December 12, 2010, indicating that the policy had fallen into a "grace period." [R. 212; R. 229] A second "grace notice" was sent on January 6, 2011. [R. 231] On Friday, February 11, 2011, the "grace period" expired.

At the time the "grace notices" were sent, plaintiff's in-house accountant, Ralph Speirs, Jr., had been out of the office due to illness. [R. 233, ¶ 3] Due to his absence, he did not actually receive the notices until he returned on Saturday, February 12, 2011. [R. 233, ¶ 3] Upon discovering the "grace notices," he immediately tried to call Conseco to pay the policy up-to-date. [R. 233, ¶3] However, because it was a Saturday, he was unable to reach anyone. [R. 233, ¶3] Mr. Speirs again contacted Conseco on the following Monday, February 14, 2011. [R. 233, ¶3] The Conseco representative he spoke to told him that the policy had terminated and that he could not pay any premiums. [R. 233, ¶3] Mr. Speirs requested to pay the premium current but the Conseco representative refused to tell him the amount of premium necessary to pay the policy up-to-date. [R. 233, ¶3] Left with no other options, Johnston & Johnston applied for reinstatement on

April 25, 2011. [R. 235] That application was rejected by Conseco on September 15, 2011. [R. 233, ¶4]

Pursuant to a class action settlement, Conseco was required to provide a "Death Benefits Extension" in which coverage was continued for 183 days after the "grace period" expired. [R. 58, ¶8] This period expired on September 12, 2011, at which time the policy terminated (three days before Conseco notified Johnston & Johnston that its reinstatement application had been rejected). [R. 60, ¶15 & 17] Mrs. Johnston passed away on August 15, 2012. [R. 396]

## C.    Conseco's notice practices.

As discussed above, Conseco was required by the terms of the insurance policy to provide an annual report listing the cash value of the policy, as well as various other expenses, deductions, etc. However, this report was only provided once per year and the nature of the policy meant that its cash value was subject to change based upon fluctuating "cost of insurance." Thus, Johnston & Johnston had no way of knowing with any certainty when additional premium payments were necessary until it received notice from Conseco. Unfortunately, as is the case here, Conseco's policy was to only send notices after the policy had already lapsed and fallen into a "grace period." Due to this practice, without prior notice being provided, the subject policy had lapsed into the "grace period" 22 times in the six years preceding the termination at issue. [R. 59, ¶14; Appellant's Brief at 14-15]

As admitted by Conseco in its brief, such a practice "perpetually jeopardized the viability of the policy." [Appellant's Brief at 15]

## SUMMARY OF THE ARGUMENT

This case arises out of the application of LSA-R.S. 22:905, Louisiana's statutory notice requirement for cancellation of life insurance policies. LSA-R.S. 22:905 requires that an insurer provide written notice of the amount owed 15-45 prior to the day the premium becomes due. Both this court and the Louisiana appellate courts have held that this statute is intended to protect the insured and provide a fair opportunity to pay the policy's premiums at the time it comes due. To serve this purpose, and as a forfeiture statute, LSA-R.S. 22:905 is strictly construed against the insurer and in favor of the insured.

The specific issue raised in this appeal is whether "grace notices," sent after the policy has lapsed and has insufficient value to maintain coverage, strictly comply with LSA-R.S. 22:905's requirement that notice be provided before the premium is payable. Below, the district court properly held that such notices failed to meet this "strict compliance" standard. The district court's reasoning correctly applied both the technical requirements and purpose of LSA-R.S. 22:905, was logically sound, and should be affirmed.

As Johnston & Johnston pointed out in its motion for summary judgment below, "grace notices," by their very definition, cannot comply with LSA-R.S.

8

22:905.  Louisiana's statutory requirement mandates that notice be provided at least 15 days <u>before</u> the premium is "payable."  Both the Louisiana Supreme Court and this court have held that the term "payable" in this context means the day the payment becomes "due."  Thus, once a policy has lapsed and fallen into a "grace period," which is defined as an extra period of time beyond the date the premium is due, cannot possibly meet this standard.

In the present case, the policy undisputedly lapsed on December 12, 2010, the day in which the cash value became insufficient to maintain coverage.  At that time, a 61-day "grace period" was triggered, which allowed an overtime period of sorts for the insured to pay the policy current, even though it had already lapsed.  Under these facts, the notice was required to be provided at least 15 days before December 12, 2010, the day the policy lapsed and the payment of additional premiums became necessary to maintain coverage.  This notice was not provided and the cancellation was therefore "illegal and of no effect."

Throughout its appeal, Conseco goes to great lengths to find some basis to reverse the district court's application of LSA-R.S. 22:905.  However, each and every one of these arguments are unpersuasive and without merit.  The principal argument below and now argued before this court is that since Conseco would have still accepted past-due payments up until the last day of the grace period, the end of the grace period is the operative day for notice.  This argument is illogical

and contrary to the applicable law.  As pointed out above, notice is required <u>before</u> the premium is due and the "grace period" does not begin until the premium is already past-due and the policy has lapsed.  Moreover, the Louisiana Supreme Court has held that such extensions do not affect the operative date for notice.  Thus, Conseco's arguments cannot possibly meet the "strict compliance" requirements and flies in the face of LSA-R.S. 22:905's purpose of providing a fair opportunity to pay the premium at the time it comes due (not <u>after</u> the policy has already lapsed).

## STANDARDS OF REVIEW

Conseco has correctly identified the *de novo* standard for review of the district court's grant of summary judgment.  However, Conseco has incorrectly stated the standard for appellate review of the district court's denial of Conseco's Rule 59(e) Motion to Alter or Amend Judgment.  Because the district court specifically stated that it would not consider the arguments raised in the Rule 59(e) motion, the district court's ruling is reviewed for abuse of discretion.

The applicable standard of review of the denial of a Rule 59(e) motion to alter or amend is dependent upon whether the district considered additional materials or arguments that were not previously raised with the court.  *Templet v. HydroChem, Inc.*, 367 F.3d 473, 477 (5th Cir. 2004).  If such new materials or arguments are offered, the court may consider the new materials in its discretion.

*Ford Motor Credit Co. v. Bright*, 34 F.3d 322, 324 (5th Cir. 1994). "If the materials were considered by the district court, and the district court still grants summary judgment, the appropriate appellate standard of review is *de novo*." *Templet* at 477, citing *Bright* at 324. "However, if the district court refuses to consider the materials, the reviewing court applies the abuse of discretion standard." *Id*. "Under this standard of review, the district court's decision and decision-making process need only be reasonable." *Id*.

In the present case, the district court refused to consider Conseco's new arguments on the basis that they could have been raised prior to the court's ruling on summary judgment and that Conseco was trying to re-litigate issues already decided. [R. 461-66] Indeed, in its memorandum ruling, the court went through each of Conseco's new arguments and specifically stated that they would not be considered. [R. 462-465]

The court addressed this exact issue in *Statsan, Inc. v. Logal*, 48 Fed.Appx. 917 (5th Cir. 2002). In *Statsan*, the appellant raised arguments in opposition to defendant's motion for summary judgment after judgment was entered, which the district court treated as a Rule 59(e) motion to reconsider. However, the district found the new arguments to be untimely and did not consider them. This court held that since the district court did not consider the new arguments, its denial of the rule 59(e) motion would be reviewed for abuse of discretion.

11

Here, the district court specifically stated that it would not consider Conseco's arguments. As such, this court should review the district court's denial of Conseco's Rule 59(e) motion for abuse of discretion.

## APPLICABLE LAW

### A.     Applicable statute.

The parties agree that the subject insurance policy is governed by LSA-R.S. 22:905. [R. 213] While the policy at issue was a "flexible premium" policy, it was not subject to monthly premiums and was issued for a period beyond one year. As such, LSA-R.S. 22:905 applies. *Lemoine v. Security Indus. Ins. Co.*, 569 So.2d 1092, 1095 (La. App. 3rd Cir. 11/07/90).

### B.     Construction and application.

LSA-R.S. 22:905 is a forfeiture statute and, as such, must be strictly construed against the insurer and in favor of the insured. *Vining v State Farm Ins. Co.*, 409 So.2d 1306, 1309 (La. App. 2nd Cir. 1/25/82); *Turner v. OM Financial Life Ins. Co.*, 822 F.Supp. 2d 633, 637 (W.D. La. 2011); *Lester v. Aetna Life Ins. Co.*, 295 F.Supp. 1208, 1214 (W.D. La. 1968). This strict construction standard mandates that any ambiguities or terms susceptible to more than one interpretation be resolved in favor of the insured. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 764 (La. 1/14/94).

Furthermore, it is important to note that LSA-R.S. 22:905 is a prohibitory law. *Boring v. Louisiana State Ins. Co.*, 97 So. 856, 858 (La. 6/30/23). As such, it is treated as if it is written into the policy and cannot be changed, waived or forfeited by private agreement of the parties. *Id.*

## C.  Purpose.

LSA-R.S. 22:905 was enacted to protect the insured. In short, its purpose is to "protect the insured against losing his insurance coverage through mere neglect to pay his premiums and, further, to give the insured a fair chance to meet the payments when due." *First Am. Bank & Trust of LA v. Texas Life Ins. Co.*, 10 F.3d 332, 336 (5th Cir. 1994); *Lester v. Aetna Life Ins. Co.*, 433 F.2d 884, 890 (5th Cir. 1970); *Boring v. Louisiana State Ins. Co.*, 97 So. 856, 858 (1923).

## ESSENTIAL TERMS AND DEFINITIONS

This appeal is based entirely upon the district court's determination of the date the policy premium was "payable" or "due" for purposes of the notice requirement. As such, Johnston & Johnston feels that it is prudent to first look to the definition of the essential terms before delving into further analysis.

## A.  "Payable" is defined as the date a premium is "due."

The operative date for notice required by LSA-R.S. 22:905 is the date in which the premium is "payable." As the district court correctly ruled, Louisiana

law has defined this term for the purpose of LSA-R.S. 22:905 as the date the premium is "due."

In *Boring v. Louisiana State Ins. Co.*, 97 So. 856 (La. 6/30/23), the Louisiana Supreme Court considered this very question and held that "it is clear from the language of the act that this notice to the insured is necessary where the premium, interest, installment or portion thereof, **is due** on the policy" (emphasis ours).  *Id* at 553.  Later in the opinion, the *Boring* court again recognizes the operative date for statutory notice as the date "when said premium became due." *Id*.  This court has likewise held that the operative date for the required statutory notice is the date the premium is "due."  *First American Bank & Trust of LA v. Texas Life Ins. Co.*, 10 F.3d 332, 335-36 (5th Cir. 1994)  (The "statutorily prescribed" time period for notice is "15 [days] before the premium was "due".) The jurisprudential definition is also consistent with common usage.  The Oxford American Dictionary also defines "payable" as "due."  OXFORD AMERICAN DICTIONARY (3rd Ed. 2010).

The correct definition of this term for our purposes is not in dispute.  As discussed above, it has been clearly defined by the United States Fifth Circuit and the Louisiana Supreme Court.  Moreover, Conseco itself has defined the term "payable" as "due" in its Motion to Dismiss.  [R. 38 ("22:905 requires that notice of a premium deadline be given at least 15 days, and not more than 45 days, prior

to the date the premium is due".)]   As such, there is no dispute that the term "payable," as it relates to our application of LSA-R.S. 22:905, means the date the payment is "due."

**B.    "Grace period" is defined as a period of time <u>after</u> a payment is due.**

Of particular significance to the arguments raised on appeal, "grace period" is well-defined as a period of time occurring <u>after</u> a premium is due.  The Merriam-Webster dictionary defines "grace period" as "a period of time ***beyond a due date*** during which a financial obligation may be met without penalty or cancellation" (emphasis added).  MERRIAM-WEBSTER ONLINE DICTIONARY, April 3, 2013.  The Oxford English Dictionary likewise defines the term as "a period officially allowed for payment of a sum due or for compliance with a law or condition, especially an ***extended period*** granted as a special favor" (emphasis added).  OXFORD ENGLISH DICTIONARY ONLINE, April 3, 2013.

The common usage of these terms is also consistent with their definition in the legal realm.  Black's Law Dictionary defines "grace period" as "a period of ***extra time*** allowed for taking some required action (such as payment of an obligation) without incurring the usual penalty for being ***late***" (emphasis added).  BLACK'S LAW DICTIONARY 717 (8th Ed. 2004).  Black's goes on to state that "insurance policies typically provide for a grace period of 30 days ***beyond the premium's due date***, during which the premium may be paid without the policy

being cancelled" (emphasis added). *Id*. Merriam-Webster's Dictionary of Law similarly defines the term as "a period of time ***beyond a scheduled date*** during which a required action (as payment of an obligation) may be taken without incurring the ordinarily resulting adverse consequences" (emphasis added). MERRIAM-WEBSTER DICTIONARY OF LAW (13th Ed. 2011).

The record establishes that Conseco has adopted the common usage of "grace period" in its own practices and interpretations. In its Brief in Support of Motion to Dismiss [R. 32], Statement of Uncontested Facts [R. 48, P 4] and Supporting Affidavit of David Rikkers [R. 56, ¶ 6, erroneously labeled as ¶ 4], Conseco stated that "the premium amount requested in a grace notice is the ***negative*** cash value, plus the monthly cost of insurance and expense charges needed to bill the policy current until the end of the grace period" (emphasis added). For the policy to have negative cash value, it must necessarily already be past-due (how else could it have negative cash value?).

Pursuant to its common usage, which is also employed by Conseco, a "grace period" is an extended period of time occurring <u>after</u> the due date has passed. Thus, by its very definition, it cannot begin until the policy is already past-due.

## C.     Lapse.

The term "lapse" is also used by the parties throughout the record and on appeal. As such, it seems prudent to also define that term here.

With regard to flexible premium life insurance policies, the Louisiana Administrative Code states that "Unless otherwise defined in the policy, lapse shall occur on that date on which the net cash surrender value first equals zero."  LA. ADMIN. CODE TIT. 37 § 8511(A)(6)(b).  In the present case, Conseco admits that the subject policy had a net value of zero and therefore lapsed "no later than December 12, 2010."  [R. 58, ¶ 9; Appellant's Brief at 33]

## DISCUSSION

**A.    The district court correctly ruled that the operative "due date" for notice was December 12, 2010.**

The district court correctly ruled that the operative "due date" in this case was December 12, 2010.  The law is clear that the term "payable," as used in LSA-R.S. 22:905, means the date the premium is "due."  Here, it is undisputed (and repeatedly argued by Conseco) that the policy lacked sufficient value to maintain coverage and lapsed on December 12, 2010.  As such, the policy required additional premium payments by that date in order to maintain the policy in force. The court's determination that December 12, 2010 was the operative date for notice and its ruling should be affirmed.

1.    The operative date for notice is the date a premium is "due."

As discussed in more detail above, the operative date for calculating the notice required by LSA-R.S. 22:905 is the date the premium is "payable."  Both this court and the Louisiana Supreme Court have held that "payable" means the

date when the premium is "due." Thus, the operative date for calculating the correct date for statutory notice is the date the premium became "due."

2.    <u>The district court correctly ruled that the premium became "due" on December 12, 2010</u>.

The undisputed facts of this case establish that the premium became "due" on December 12, 2010, the date in which the policy lapsed because it did not have sufficient value to maintain coverage without payment of an additional premium.

Conseco correctly argued in its motion for summary judgment that "a flexible premium policy will remain in force <u>only as long as</u> there is sufficient cash value in the policy to cover the monthly cost of insurance and expense charge deductions" (emphasis added). [R. 48, ¶ 3; R. 56 ¶ 5, erroneously labeled ¶ 3] Conseco likewise acknowledges that in the instant case, Johnston & Johnston's last premium payment was only sufficient "to keep the policy in force until December 12, 2010." [R. 37] Thus, by Conseco's own admission, the policy was only funded through December 12, 2010 and, absent payment of an additional premium, would be insufficient to remain "in force" as of that date.

It is likewise undisputed that the policy "lapsed" on December 12, 2010. LA. ADMIN. CODE TIT. 37 § 8511, which was heavily relied upon in Conseco's appeal brief, states that "unless otherwise defined in the policy, lapse shall occur on that date on which the net cash surrender value first equals zero." As Conseco notes in its brief, "it is undisputed that the net cash surrender value equaled zero no

later than December 12, 2010." [Appellant's Brief at 33] Thus, by Conseco's own admission, the policy lapsed for insufficient value on December 12, 2010.

The undisputed facts and Conseco's own arguments conclusively establish that the subject policy lapsed on December 12, 2010. Without payment of a premium by that date, the policy would no longer have sufficient funding to remain "in force." As such, the district court correctly determined that December 12, 2010 was the operative date for notice and its ruling should be affirmed.

3. <u>The district court correctly ruled that "grace notices" provided after the policy had already lapsed into a "grace period" could not strictly comply with LSA-R.S. 22:905.</u>

As outlined above, there is no dispute that the policy lapsed for insufficient cash value on December 12, 2010. As such, it would have terminated at the time of this lapse but for a policy provision granting a 61-day grace period allowing extra time to pay up the negative cash value of the policy. However, it is important to note that the additional time allowed for payment during this "grace period" did not change the operative "due date" for notice under LSA-R.S. 22:905.

This issue has been conclusively decided by the Louisiana Supreme Court. In *Boring v. Louisiana State Ins. Co.*, 97 So. 856 (La. 6/30/03), the court held that Louisiana's notice requirement was a prohibitory law and, as such, was deemed to be written into the policy and could not be changed by private agreement of the parties. *Id* at 858. As such, "neither extension of time of payment of the premium

nor any other consideration can be justly held a legal and valid cause for the violation of a prohibitory law, founded in wise and beneficent public policy." *Id.* Because the *Boring* court held that the operative date for notice was the day the premium was "due," and that this date cannot be changed through the grant of additional time for payment, notices provided after the date the policy lapsed into the grace period for insufficient funds cannot possibly satisfy LSA-R.S. 22:905's notice requirement.

The *Boring* decision is consistent with the customary construction of a "grace period" in relation to the premium due date. The preeminent treatise on insurance law, Couch on Insurance, states that "the grace clause does not change the date when the premium is due." COUCH ON INSURANCE § 76:57. As recognized by Couch, as well as other circuit courts facing this issue, the "grace period" is intended to provide protection to the insured by allowing late payments without penalty, but it does not change the date of the original premium due date. *Id*; *Matter of Advance Glove Mfg. Co.*, 761 F.2d 249, 251 (6th Cir. 1985) ("The 31-day grace period was not intended by the parties or Michigan law to defer the due date of the premium, but was designed for the unrelated purpose of protecting the policyholder from premature termination of coverage upon default"); *In re Advanced Sys. Int'l, Inc.*, 234 F. Appx. 398, 402 (6th Cir. 2007) ("payments made

20

during a grace period mandated by section 500.3410 [Michigan's grace period requirement] are, in fact, late payments").

This application utilized by the courts and commentators is also consistent with Conseco's own application of the terms. Conseco asserted to the district court that the amount sought in a "grace notice" was the total of the negative cash value of the policy, plus the cost of insurance and expense charges necessary to pay the policy through the end of the grace period. [R. 32; R. 48, P 4; R. 56, ¶ 6, erroneously labeled as ¶ 4] Naturally, a policy with a "negative" value, which is necessary for a grace period to begin, is already past-due (if payment is not yet due, how can the policy have a negative value?).

In truth, such an application of the "grace period" as a measure of time that exists only after the due date has passed, is common sense based upon the term's plain meaning. As discussed above, a "grace period" is a period of "extra time" "beyond a due date." *Supra* at 15. Naturally, such a period cannot begin until the due date has already passed. One cannot extend "extra time" until the original time has already expired. This would be akin to having an overtime period at a sporting event before the time in regulation has ended. By definition, it cannot begin until the game clock has already expired. Likewise, a "grace period" providing "extra time" cannot begin until the due date has already occurred.

In sum, by its very definition, a "grace period" does not begin until the premium is already past-due. Moreover, the existence of the extended time provided by the "grade period" does nothing to change the "due date" or the notice requirements mandated by LSA-R.S. 22:905 as a prohibitory law.

4.    The district court's ruling is consistent with the applicable rules of statutory construction.

As discussed throughout this section, the court correctly utilized the plain language of the statute and other applicable terms. This is not only sound logic, but is also required by the rules of statutory interpretation. As a forfeiture statute, the district court was required to strictly construe LSA-R.S. 22:905 against the insurer and in favor of the insured. *First American Bank & Trust of LA v. Texas Life Ins. Co.*, 10 F.3d 332, 335 (5th Cir. 1994). Thus, whenever a term is susceptible to two or more meanings, the court was required to utilize the interpretation that benefits the insured. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 764 (La. 1/14/94). The district court's application of LSA-R.S. 22:905 is the only interpretation that properly follows these rules.

Strictly construing the terms "payable," "lapse," and "grace period" leave only one conclusion regarding the operative date for notice. The policy "lapsed' and therefore mandated additional premium payments on December 12, 2010. A "grace period," by definition does not begin until after this date has passed. As such, a strict construction of these terms provides that a "grace notice" issued

during a "grace period" after the policy has "lapsed" cannot satisfy LSA-R.S. 22:905's requirement for notice before the premium becomes "due."

5.    <u>The district court's ruling is the only conclusion that would properly achieve the purpose of LSA-R.S. 22:905</u>.

The application of LSA-R.S. 22:905 employed by the district court is also correct because it is the only interpretation that adequately serves the stated purpose of the statute at issue. The jurisprudence is clear that LSA-R.S. 22:905 was enacted for the express purpose of "protecting the insured" and giving the insured a fair opportunity to pay the premium "when due." *Lester v. Aetna Life Ins. Co.*, 433 F.2d 884, 890 (5th Cir. 1970*); First Am. Bank & Trust of LA v. Texas Life Ins. Co.*, 10 F.3d 332, 336 (5th Cir. 1994); *Boring v. Louisiana State Ins. Co*., 97 So. 856, 858 (La. 1923). The court's application of LSA-R.S. is the only one that serves both of these purposes.

The primary purpose of LSA-R.S. 22:905 is to give the insured a fair opportunity to pay the premium "when due." *Lester* at 890; *Boring* at 858. The only way this can occur is if notice is provided before the premium becomes due (which is why the statute specifically requires notice 15-45 days before the policy becomes "payable" or "due"). Waiting until the policy has already lapsed and has fallen into a grace period renders it impossible for the insured to pay the premium "when due" because the date on which payment was necessitated has already passed. At this point, the insured is already in the hole, owing "negative cash

value" before he ever receives notice. This not only fails to meet the technical requirements of LSA-R.S. 22:905, but flies in the face of its intended purpose.

The district court's application of LSA-R.S. 22:905 also serves the general purpose of "protecting the insured." *Lester* at 890; *First Am.* at 336; *Boring* at 858. Simply put, notice given before the premium comes due best serves this object. If notice is given according to the district court's interpretation, the insured will have at least 15 days to pay the premium and avoid a lapse into the grace period, which Conseco admits "jeopardizes the viability of the policy." [Appellant's Brief at 15] Utilizing the interpretation offered by Conseco, the insurer would not have to provide notice until 15 days before the grace period expires, which is 46 days after the policy has already lapsed in the present case. Such a construction cannot meet the intended purpose of LSA-R.S. 22:905 to protect the insured through prior notice.

For all these reasons, the district court properly applied the terms of LSA-R.S. 22:905, followed the rules of statutory construction and met the stated purpose. As such, the district court did not commit error and its judgment should be affirmed.

## B.   Conseco's arguments are illogical, unpersuasive and contrary to law.

As discussed above, the district court correctly ruled that December 12, 2010 was the operative date for statutory notice. In the interest of thoroughness though,

Johnston & Johnston will attempt to respond to Conseco's various contentions. Johnston & Johnston will begin by addressing the inherent flaw affecting the entirety of Conseco's arguments and then address each of those arguments individually.

1.     <u>The foundation of Conseco's entire brief is based upon the erroneous argument that "grace notices" can satisfy the requirements of LSA-R.S. 22:905.</u>

All of Conseco's arguments on appeal hinge upon its assumption that "grace notices" are capable of satisfying the requirements of LSA-R.S. 22:905. This is incorrect. Johnston & Johnston will begin by addressing this fatal flaw, which disposes of Conseco's arguments in their entirety, before addressing each specific allegation.

Regardless of the nature of Conseco's various arguments, they are all plagued by the fatal flaw that "grace notices," by their very definition, cannot possibly satisfy LSA-R.S. 22:905. As addressed in more detail above, a "grace period" is defined as a period of time that only occurs after the due date. It is literally impossible for "extra time" to be provided before the principal due date has occurred. Thus, if the premiums are current and not yet due, a "grace period" cannot even begin. As a threshold issue, the fact that the policy entered a grace period at all establishes that the requisite time for notice has already passed. As

such, a notice sent during this "grace period" cannot satisfy LSA-R.S. 22:905's requirement that notice be sent before the premium is due.

It cannot be genuinely disputed that the subject policy was "due" on December 12, 2012. By Conseco's own admission, coverage is provided only as long as the policy has sufficient cash value to cover the cost of insurance. [R. 48, ¶ 3; R. 56 ¶ 5, erroneously labeled ¶ 3] Conseco has further admitted that the subject policy had a net value of zero on December 12, 2012, necessitating the payment of additional premiums in order to maintain the policy "in force." [R. 58 ¶9; R. 40; Appellant's Brief at 33] The failure to pay additional premiums by this date is what triggered the "grace period," in which the policy was no longer funded but continued based only upon this "grace" provision.

Before reaching any further evaluation, we can disregard Conseco's arguments wholesale because they are all based on the logically flawed position that notices sent during the "grace period" (which by definition means that the premium is already past-due) can strictly comply with LSA-R.S. 22:905. The basis of this argument is impossible and further analysis is therefore unnecessary.

2.   Conseco's argument that premiums were "optional" until the expiration of the grace period is unpersuasive and contrary to applicable law.

Faced with the impossibility of arguing that "grace notices" sent after the policy has already lapsed strictly complied with LSA-R.S. 22:905, Conseco has

offered the novel argument that because it would continue to accept the late payments until the end of the "grace period," payment was merely "optional" and there was no real "due date" until the end of the grace period. This argument is not only illogical, but contradicts the applicable jurisprudence.

Notwithstanding the fact that a premium payment became necessary to maintain coverage on December 12, 2010 (which has been discussed in two separate sections above and will not be needlessly repeated here), Conseco's arguments would essentially do away with "due dates" for any policy that contained a grace clause. Under Conseco's logic, no payments would be "required" or "due" for an insurance policy with a grace clause because, technically, no termination could occur until expiration of that grace period. Since, the policy allowed extra time for payment, any premium before the end of the grace period would merely be optional. This is absurd. The very nature of a "grace period" is to provide extra time for payment to protect the insured, not to change the due date or render earlier premium payments optional.

Furthermore, this argument is in direct conflict with the applicable law. A grace clause in an insurance policy does nothing to change or delay the premium due date. COUCH ON INSURANCE § 76:57. As such, extensions of time do not change the operative date for notice under LSA-R.S. 22:905. *Boring* at 858. Thus, while the idea of premiums being "optional" until the expiration of grace periods is

creative, it conflicts with the applicable law, creates an absurd application and fails to comply with the strict construction applicable to Conseco's notice duties under LSA-R.S. 22:905.

3.   <u>Conseco's argument that premiums were not required to be paid by the policy is erroneous</u>.

In line with its argument that premiums were merely optional, Conseco takes this argument to the next level by suggesting that because the flexible premium policy did not have a due date defined by a calendar date, "the policy does not require that it [the premium] be paid." [Appellant's Brief at 19]  This argument is entirely illogical.

While it is true that the flexible premium policy does not designate a specific calendar date for premium payments, like any insurance policy, it nevertheless requires payment of premiums to maintain coverage.  By its nature, the flexible premium policy does not utilize a calendar date to determine when premiums are required to be paid.  However, payment of premiums is still necessary if the insured wishes to keep the policy in effect.  Instead of utilizing the calendar to determine the date in which the premium becomes due, the policy bases this on the amount of cash value in the policy.  As soon as the cash value is insufficient to cover the cost of insurance, a premium payment is required.

The flexible premium policy is akin to the gas tank in a car.  There is no requirement in the owner's manual stating that you must fill your tank with gas on

a particular day.  However, no one would argue that the car does not require refills. Similarly, the flexible premium policy does not have a set date on the calendar on which a premium must be paid.  But, if the owner wants the policy to remain in force and provide coverage, a payment is certainly required.  Conseco's argument that no premium payments were required under the policy is just the like the car's gas tank: premium payments/re-fills are required as long as the owner wants the coverage to remain in effect and the vehicle to run.

4.    <u>Even accepting Conseco's arguments as true, the notice provided was still untimely.</u>

Assuming *arguendo* that Conseco's position was correct, the "grace notices" at issue would still be untimely.  Conseco argues in its brief that "J&J was not obligated to make a premium payment until the cash surrender value became insufficient to cover the next monthly payment."  [Appellant's Brief at 21]  As repeatedly urged by Conseco, this occurred on December 12, 2010, the start of the grace period.  By Conseco's own argument, Johnston & Johnston became "obligated" to make a payment on December 12, 2010, the first day of the grace period.  Thus, pursuant to *Boring*, Couch and a strict construction of LSA-R.S. 22:905, December 12, 2010 is the date the premium became "due' and the extended time provided by the policy's grace period does not extend the period allowed for notice.  As such, the notices sent after December 12, 2010, the date

when Conseco argues that Johnston & Johnston became obligated to make a premium payment, are untimely.

5.    Conseco's argument that the "grace period" extended the time for statutory notice is legally incorrect.

The bulk of Conseco's argument is centered on its contention that the policy provided a "grace period" and that by virtue of this extension of time for payment, the notice requirement was also extended. This is legally incorrect.

As discussed in greater detail above, the only relevant determination in applying LSA-R.S. 22:905 is the date the premium becomes due. As Conseco argues, this occurred on December 12, 2010, when the policy lacked sufficient value to maintain coverage. The fact that the policy provided additional protections by granting an extended "grace period" in which it would accept payments is immaterial. *Boring* at 858; *Matter of Advance Glove Mfg. Co.*, 761 F.2d 249 (6th Cir. 1985); COUCH ON INSURANCE § 76:57. Moreover, Conseco's reading of "payable" to mean any period in which payments would be accepted instead of "due" is contrary to the Louisiana Supreme Court's instructions and the requirement that the terms be strictly construed in favor of Johnston & Johnston. *Boring* at 858; *First American Bank & Trust of LA v. Texas Life Ins. Co.*, 10 F.3d 332, 335 (5th Cir. 1994) Conseco's repeated attempts to have the court overlook these well-established legal principles is very telling regarding the merits of its argument.

6.     Conseco erroneously describes and relies upon the district court opinion of *Turner v. OM Financial Life Insurance Company*.

Conseco spends two and one-half pages attempting to convince the court that the Western District case of *Turner v. OM Fin. Life Ins. Co*., 822 F.Supp. 2d 633 (W.D. La. 2011) held that "grace notices" complied with LSA-R.S. 22:905 and that the case is controlling.  Neither is true.

As a threshold issue, it is important to point out that *Turner* is a district court case and is therefore not controlling on this court.  Moreover, Conseco's statement of the holding is incorrect and misleading.  While the *Turner* court did involve a flexible premium insurance policy, the court did not reach the issue of whether "grace notices" could satisfy LSA-R.S. 22:905.  In *Turner*, the "premium due notice" was undisputedly defective because it did not identify the correct amount owed.  *Turner* at 637.  Moreover, it was not even argued that the "grace notice" was sent within the requisite 15-45 day period.  *Id.*  As such, any consideration or discussion regarding the sufficiency of a grace notice was pretermitted.  Therefore, the *Turner* opinion is not binding, lacks the in-depth analysis necessary to evaluate "grace notices" and is not even a good source for persuasive authority for this court in the present case.

7.    Conseco's use of the term "premium due date" in its untimely "grace notices" is irrelevant.

Throughout Conseco's appellate brief, it argues that its use of the term "premium due date" in its "grace notices" is indicative of the due date the court should use for calculating the notice required by LSA-R.S. 22:905. This is incorrect. The appropriate due date is a legal determination that was correctly made by the district court based upon the undisputed evidence. The fact that Conseco attempted to identify a self-serving later date in its "grace notices" (sent after the policy had already lapsed) does not change this. As the old saying goes, "No matter how many times you say it, it doesn't make it true." Once the due date passed with the lapse of the subject policy, Conseco could not go back and designate a new due date to avoid the consequences of LSA-R.S. 22:905. Moreover, at the risk of sounding like a broken record, the law is clear that the extended period for payment provided by the grace period did not change the operative date for the notice required by LSA-R.S. 22:905. *Boring* at 858; COUCH ON INSURANCE § 76:57; *Matter of Advance Glove Mfg. Co.* at 251.

8.    Conseco's argument that the court's interpretation would lead to "absurd consequences" has been waived and is unpersuasive.

Conseco argues that the district court's requirement that notice be provided 15-45 before it becomes due would lead to absurd consequences on the basis of a hypothetical scenario in which insureds could withdraw funds from their policy

and leave the insurer insufficient time to provide notice. First and foremost, this issue has been waived because it was not timely raised below until after the district court had already entered its judgment. Moreover, even if the argument were properly before the court, this argument ignores the applicable case law and inappropriately asks the court to second-guess the legislature by inserting its own public policy considerations into an issue of pure statutory interpretation.

### i)     Conseco's argument has been waived.

This argument was not raised by Conseco until its Rule 59(e) Motion to Alter or Amend Judgment. [R. 411] In its ruling on that motion, the district court specifically declined to consider the untimely argument. [R. 464] As such, the argument is deemed waived and should not be considered by this court.

As a general rule, "a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). As such, arguments raised for the first time in Rule 59(e) motions are deemed waived if the district court declines to consider the untimely arguments. This specific issue was addressed by this court in *LeClerc v. Webb*, 419 F.3d 405 (5th Cir. 2005), wherein the court held that arguments raised for the first time in a motion for reconsideration were properly disregarded by the district court, were waived and were therefore improper for consideration on appeal. *Id* at 412, n.13. Exclusion of untimely arguments, raised for the first time in Rule 59(e) motions, are shared by

virtually all of the other circuit courts. *Mungo v. Taylor*, 355 F.3d 969, 978 (7th Cir. 2004) ("Arguments raised for the first time in connection with a motion for reconsideration, however, are generally deemed to be waived"); *Dillon v. Select Portfolio Servicing*, 630 F.3d 75, 81 (1st Cir. 2011) ("When a party makes an argument for the first time in a motion for reconsideration, the argument is not preserved for appeal"); *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1999); *Pittston v. Ultramar America Ltd. v. Allianz Ins. Co.*, 124 F.3d 508, 519 n.12 (3rd Cir. 1997); *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1038-39 (10th Cir. 2009) ("His failure to raise a vagueness challenge to the statute before the district court entered summary judgment bars such a challenge on appeal").

In the present case, this argument was not raised until Conseco's Rule 59(e) motion and the court declined to consider it as untimely. As such, it was not passed upon by the district court and the argument is waived on appeal.

> ii)    *Even if the argument were properly before this court, it would still be unpersuasive because it misstates the applicable law.*

In this untimely argument raised for the first time after the court's judgment, Conseco argues that the court's interpretation of LSA-R.S. 22:905 would allow insureds to take advantage of the statutory notice requirement by withdrawing policy funds immediately before a premium due date, thereby leaving the insurer insufficient time to provide statutory notice. Notwithstanding the inappropriate public policy nature of this argument, which is discussed below, defendant's

description of these inapplicable, hypothetical facts is completely inaccurate. The applicable jurisprudence, which was appropriately considered by the district court in its ruling, holds that the notice provision is applied to protect the insured from "losing coverage due to <u>inadvertence</u>" (emphasis added). *Turner* at 637. As such, an insured who purposefully withdraws funds immediately before a premium due date, as described in defendant's hypothetical, would not fall in this category and would not enjoy the protections of LSA-R.S. 22:905. Therefore, the court's application of LSA-R.S. 22:905 in the present case would have no effect on those situations and defendant's argument is entirely inapplicable.

> iii)    *Conseco's untimely hypothetical is also inappropriate because it seeks to improperly inject a public policy determination into a matter of pure statutory interpretation.*

The Louisiana Supreme Court has held that it is error for a court to "allow its own policy determination to override the policy determination made by the legislature." *Soloco, Inc. v. Dupree*, 707 So.2d 12, 16-17 (La. 1/21/98). "It is not the prerogative of the judiciary to disregard public policy decisions underlying legislation or to reweigh balances of interests and policy considerations already struck by the legislature." *Id*. In sum, the court held that "it is not our role to consider the wisdom of the legislature in adopting the statute … it is our province to determine only the applicability, legality, and constitutionality of the statute. *Id*, citing *Chamberlain v. State, through DOTD*, 624 So.2d 874 (La. 1993).

The substance of Conseco's argument is that the legislature's intent to protect the insured through statutory notice requirements is outweighed by the risk that an insured may take advantage of those provisions.  In making this argument, Conseco is asking the court to "judge the wisdom of the statute" and "reweigh balances of interests" between the interest of the insured in receiving notice and the burden on the insurer in complying with those notice requirements.  This is inappropriate.  Balancing these competing interests is the responsibility of the legislature and our jurisprudence is clear that these are not proper considerations for the court.  *Soloco* at 16-17.

In truth, most laws can be taken advantage of or utilized by some party to their own advantage.  Such risks are considered by the legislature, who must then determine if the risks are justified.  Here, the legislature obviously found such a justification.  If Conseco is unhappy with the manner in which the legislature balanced these competing interests, the appropriate remedy is to lobby the legislature to change the law.  However, it is not appropriate to suggest that the court deviate from the well-established rules of statutory interpretation utilized in its ruling for the sake of substituting its own policy concerns for those of the legislature.

9.   The trial court's interpretation does not render any portion of LSA-R.S. 22:905 meaningless or create a conflict with other laws.

Next, Conseco argues that the district court's interpretation of LSA-R.S. 22:905 was legally wrong because it rendered a portion of the statute meaningless and created a conflict with an administrative regulation. Neither allegation is accurate.

In addition to providing a requirement for notice prior to premiums becoming due, LSA-R.S. 22:905(B) also includes a provision prohibiting the cancellation of the policy for at least thirty days after the required notice is sent. Conseco argues that the court's interpretation renders subsection B meaningless and creates a conflict with La. Admin. Code Tit. § 8511, which mandates a 30-day grace period after the lapse of a flexible premium life insurance policy. According to Conseco, a conflict exists that requires reversal of the district court's otherwise sound interpretation, because the grace period provided by § 8511 will always be longer than the minimum delay set out in LSA-R.S. 22:905(B).

Conseco's attempt to create a conflict where none exists fails to appreciate the nature of the statute and regulation at issue. LSA-R.S. 22:905 is a general statute applicable to all life insurance policies which provides a minimum amount of protection for the delay of cancellation on coverage. It is a floor, not a ceiling. The fact that a regulation creates additional protections by providing an even longer grace period for flexible premium life insurance policies is not a conflict.

To use the hypothetical offered to the district court, the legislature may recognize the risks of chemical exposure and enact a statute prohibiting the building of any structure within 500 yards of a toxic waste processing plant. Thereafter, a state commissioner may enact a regulation preventing any food processing facility from being built within 1000 yards of a toxic waste processing facility. Under Conseco's strained attempt to create a conflict, the initial statute would be void because the subsequent regulation provided additional protections beyond that of the statute.

10.    Conseco's appeal misunderstands the district court's statement regarding the application of § 8511.

In its appeal, Conseco argues that the district court misunderstood the applicable provisions regarding grace periods and the applicable notice. Specifically, Conseco references the last page of the district court's ruling denying Conseco's Motion to Alter or Amend Judgment. In this section of the ruling, the district court notes that § 8511 defines the date of lapse as December 12, 2010, thereby bolstering the court's previous determination. The court went on to note though, that even if Conseco's interpretation were accepted and lapse occurred at the end of the policy's grace period, § 8511 would mandate an additional 30 days grace period from the date of lapse and Conseco's failure to provide that would render any other errors harmless.

Conseco misunderstands this section of the court's ruling. The district court is not stating that the end of the policy's grace period was the date of lapse (to the contrary, the court states in the preceding paragraph that, pursuant to § 8511, lapse occurred on December 12, 2010). [R. 465] Instead, the district court is merely stating that Conseco cannot have its cake and eat it too. If the lapse occurred on December 12, 2010 as defined by § 8511, then notice was required 15-45 days before that date and Conseco's failure to comply renders the termination a nullity. To the contrary, if the court had accepted Conseco's argument that the policy lapsed at the end of the grace period on February 11, 2011, Conseco would have still failed to meet its obligations by failing to provide 30 days of grace following this lapse.

## C. Johnston & Johnston was entitled to pay its premiums up-to-date and maintain coverage because the defective termination was "illegal and of no effect."

Conseco argues that even if the district court's interpretation was correct, it was not required to accept any premiums necessary to continue coverage during the automatic one-year extension. This argument is in direct conflict with the applicable jurisprudence and defies the purpose of LSA-R.S. 22:905's protections. As such, the district court's ruling was correct and should be affirmed.

1.    Conseco's failure to provide proper notice rendered the termination a nullity and the policy continued under its previous terms.

The Louisiana Supreme Court specifically addressed the procedural effect of an insurer's failure to provide the requisite notice in the seminal case of *Boring v. Louisiana State Ins. Co*.  In *Boring*, the court noted that "the notice prescribed by statute is … a condition precedent to the forfeiture of the policy."  *Id* at 858.  As such, "it follows then that any forfeiture of a policy made by a life insurance company, in the absence of a statutory notice, is illegal and of no effect" (emphasis added) *Id*.

Pursuant to *Boring*, the attempted termination in this case was of "of no effect."  As such, it is treated as a nullity and coverage continues under the previous terms of the policy as if the termination had not occurred.  Under the terms of the policy, the insured was entitled to pay premiums at any time and amount it chose and Conseco was required to accept them.  Thus, the attempted termination that "was of no effect" did not change this, the policy continued under its previous terms and Conseco should have accepted the premiums Johnston & Johnston sought to pay.

2.    Refusing to accept premiums during the automatic one-year extension subverts the purpose of LSA-R.S. 22:905.

Conseco's argument that it was not required to accept premiums sought to be paid during the automatic one year extension is in direct conflict with LSA-R.S.

22:905's entire purpose. The purpose of this statute is "to give the insured a fair chance to meet the payments when due." *First American* at 335. Defendant is arguing that its own failure to provide proper notice somehow forecloses upon the specific opportunity the statute was enacted to protect. The statutory notice requirement was designed to allow the insured an opportunity to pay the premium, not to prevent it as defendant argues.

>    i)    *Conseco's application would allow detrimental consequences that the statute was enacted to prevent.*

Defendant argues that an insurer's failure to provide notice means that the policy must automatically terminate after one year, regardless of the insured's attempts to pay its premiums during that time. This rule punishes an innocent insured for the neglect (or even intentional error) of the insurer. This is best understood from the following hypothetical scenario that was initially raised in Johnston & Johnston's Motion for Summary Judgment:  X purchases a life insurance policy at the age of 40. X is in great health at the time and dutifully pays all of her annual premiums each year as soon as she receives her notice. However, after 35 years of paying her premiums, her insurer decides that she has gotten older, her health has declined, and she is no longer a good risk to insure. It makes a business decision not to send her annual premium due notice. Without the notice, X does not pay the premium, but realizes what has occurred a few months after the premium was due. She then tries to pay the premium, but the insurer

refuses to accept it on the basis of defendant's proposed rule, arguing that she only gets one year of coverage (not due to her own fault, but due to the insurer's own error in not providing the required notice).

This rule makes no sense. Why should the insured be punished due to the insurer's error? Why should the insurer benefit from its own violation of a prohibitory law? The purpose of this statute is to allow the insured an opportunity to pay its premiums. The rule suggested by Conseco creates the opposite effect by not allowing the insured any opportunity to pay its policy current based solely on the insurer's own mistake. Such contradiction of the statute's stated purpose was properly rejected by the district court.

3.   The cases cited by Conseco in support of its argument are inapplicable.

While ignoring the Louisiana Supreme Court's holding in *Boring* that termination attempted through a defective notice was of "no effect," Conseco cites three cases that it argues hold that the insured is not required to accept premiums during the automatic one year extension. This is incorrect as the cases reach no such holding.

The first case cited was *Oschner v. Ideal Life Ins. Co.*, 945 So.2d 128, (La. App. 4th Cir. 11/8/06). In *Oschner*, the insurer admittedly failed to send the proper notice and no payments were made for a period of nine years. The court held that a second notice at the end of the automatic one year extension was not necessary.

*Id* at 132.  Thus, the issue was not whether payments could be made during the one year extension, but whether a second notice must be sent at the end of that year. This is inapplicable to the present case.  Nonetheless, some insight can be gained from the language of *Oschner*.  When discussing the extension, the court stated that the automatic extension would expire "after non-payment of the premium for one-year."  By stating that the extension expires not after the mere passage of a year, but after "non-payment' during that year, *Oschner* actually suggests that the insured should have the opportunity to pay premiums during this period.

The next case cited was *First American Bank & Trust of LA v. Texas Life Ins. Co.*, 10 F.2d 332 (5th Cir. 1991).  Once again, this case only addressed whether a second notice must be sent at the end of the automatic one year extension provided by LSA-R.S. 22:905.  This is entirely inapplicable to the question of whether the insured is entitled to pay premiums to maintain the policy during that period.

The last case offered is *Durio v. Metro Life Ins. Co*., 653 F.Supp. 2d 656 (W.D. La. 2009).  Yet again, the issue addressed by the court was whether the insurer was required to give a second written notice at the end of the automatic one year extension.  *Id* at 656.

Despite Conseco's attempt to take single lines out of context in citing these three cases, a closer examination reveals that none of the cases cited by Conseco is

on point with the present issue.   As such, the cases are unpersuasive and the Louisiana Supreme Court's holding in *Boring* that termination is "illegal" and "of no effect" should be applied to continue the policy under its previous terms, which allowed payment of premiums.

> 4.   Conseco fails to address portions of the record establishing that Johnston & Johnston sought to pay the premiums up-to-date during the one-year extension.

In arguing that Johnston & Johnston failed to establish that it sought to pay the policy current, Conseco conveniently left out references to the portion of the record that conclusively establishes those efforts. Regardless of Conseco's purported "lack of evidence" regarding Johnston & Johnston's attempts to pay the premiums after the grace period, it is undisputed that Johnston & Johnston applied for reinstatement on August 25, 2011.   [R. 60, ¶6; R. 235-36]   Naturally, reinstatement would require payment of the premiums owed on the policy. Conseco's attempt to suggest that the record lacked evidence in this regard is disingenuous and misleading.   The affidavit of Ralph Speirs also confirms Johnston & Johnston's efforts to pay the premiums up-to-date on February 14, 2011.  [R. 233 ¶3]

**D.   The district court did not err in denying Conseco's Motion to Alter or Amend Judgment.**

Conseco's Rule 59(e) motion sought to improperly re-litigate the same issue that had already been decided by the court and to introduce new arguments that

had not previously been raised. Moreover, Conseco cannot complain that it was prejudiced by being unable to argue that the December 12, 2010 date applied by the court was not the correct due date for calculation of notice.

1. <u>Conseco's Rule 59(e) motion improperly sought to raise untimely arguments and re-litigate issues that had already been decided by the district court.</u>

This court has been explicitly clear that a Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem, Inc.*, 367 F.3d 473, 478 (5th Cir. 2004), citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990). As such, "a Rule 59(e) motion may not be used to raise new arguments or present novel legal theories that could have been raised prior to judgment … nor may it be used to re-litigate old matters, or present evidence that could have been raised prior to the entry of judgment." *Centennial Broad, LLC v. Burns*, 433 F.Supp. 2d 730, 733 (W.D. Va. 2006), citing *Pacific Ins. Co. v. American Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). "Rather, Rule 59(e) 'serves the narrow purpose of allowing a party to correct manifest errors of law or to present newly discovered evidence.'" *Templet* at 479, citing *Waltman v. Int'l. Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989). "'Manifest error' is 'one that is plain and indisputable, and that amounts to a complete disregard for the controlling law." *Bailey v. Domino's Pizza, LLC*, 867 F.Supp. 835 (E.D. La. 2012). As this

court has noted, "manifest injustice" exists only "in extreme circumstances." *Quest Med., Inc. v. Apprill*, 90 F.3d 1080, 1088 (5th Cir. 1996).

Conseco's Rule 59(e) was not based upon a manifest error or newly discovered evidence. The district court provided a detailed, thorough ruling carefully addressing the issues and entering a judgment consistent with the law. [R. 385-91] Even if Conseco felt that there was merit to an appeal, it cannot be genuinely argued that this case presents one of the "extreme circumstances" in which the court committed indisputable error "that amounts to a complete disregard for the controlling law." *Quest Med, Inc.* at 1088; *Bailey* at 835.

In truth, Conseco's motion was nothing more than an attempt to re-litigate the issue already decided by the court through repetition of its same unsuccessful argument and a few new novel citations to additional authority. However, all of the law cited in these arguments was in existence well before the present lawsuit was filed. As such, the district court's ruling was proper.

2. Conseco was not prejudiced by the court's ruling that December 12, 2010 was the operative date for notice.

In passing, Conseco alleges that its Rule 59(e) motion should have been granted because it was prejudiced by the court's determination that December 12, 2010 was the operative date for calculating notice. According to Conseco, this was prejudicial because this date is different than the one initially alleged in Johnston & Johnston's complaint. This argument lacks merit for several reasons.

46

First and foremost, there is no real prejudice to Conseco because its arguments against December 10, 2010 as the operative date are same as its reasons against the initially proffered date of October 12, 2010. As the district court correctly pointed out, the backbone of Conseco's argument was that the operative date was the end of the grace period. This would not change regardless of the date offered by Johnston & Johnston.

Furthermore, as Johnston & Johnston argued in its reply brief below, the precise date the premium became "due" was immaterial. The heart of the issue before the court and argued in Johnston & Johnston's motion for summary judgment was that "grace notices," by definition, could not satisfy LSA-R.S. 22:905. As such, the precise date the premium became due is immaterial to the force of Johnston & Johnston's motion.

Moreover, Conseco cannot genuinely argue prejudice because it has repeatedly referenced December 12, 2012 as the applicable due date. Indeed, Conseco's own motion for summary judgment stated that Johnston & Johnston's previous premium payment was only sufficient to "keep the policy current through December 12, 2010," thus causing it to lapse into the grace period on that date. [R. 34, ¶ 9 & 11]

**E.    Amicus Curiae's brief should be disregarded because it improperly asks the court to modify the clear language of LSA-R.S. 22:905 to serve its policy concerns.**

The American Council of Life Insurers ("ACLI") filed an amicus curiae brief in support of Conseco's proffered liberal interpretation of LSA-R.S. 22:905. ACLI is a trade association representing life insurance companies by advocating their policy interests.  [Amicus Curiae at 2]  It is no surprise that ACLI asks this court to construe LSA-R.S. 22:905 liberally in favor of the insurer.  ACLI's argument is admittedly one based upon its advocacy to change the application of Louisiana's "old" statutory notice requirement to one more beneficial to its insureds.  *Id*.  However, such policy considerations are inappropriate for an issue of pure statutory interpretation and improperly ask the court to second-guess the legislature's decision in enacting this statutory requirement that has been the law of Louisiana, in some form, for more than 100 years.

1.    The policy opinions of a private professional organization do not override the unambiguous language of a statute enacted by the Louisiana legislature.

ACLI's first argument echoes Conseco's that flexible premium policies do not have traditional "due dates" and the district court therefore erred in calculating notice from the date in which the policy lapsed and necessitated an additional payment (like Conseco, ACLI contends that the court should have disregarded the Louisiana Supreme Court's holding that the operative date is the "due date" and

48

only considered the date the policy actually terminates). As authority for this argument, ACLI offers a brief quotation from the National Association of Insurance Commissioners Model Regulations. However, it goes without saying that the opinions of this private organization do not override the clear and unambiguous requirements of a statute enacted by the Louisiana legislature and the interpretation given to it by the Louisiana Supreme Court. Moreover, the fact that Louisiana has declined to adopt this model regulation in the 17 years since it was issued speaks volumes to the legislature's commitment to the existing statute.

2.    <u>The present case is not the appropriate forum to effectuate the policy changes ACLI advocates</u>.

On page 10 of its brief, ACLI argues that the statutory notice requirements of LSA-R.S. 22:906 are "several decades" old and need to be amended "to account for new life insurance products, like the flexible premium policies." While this may or may not be true, this court is not the appropriate forum to seek this change. ACLI's agenda to change the law should be pursued through lobbying the legislature.

LSA-R.S. 22:905 has been law in Louisiana for more than 100 years. Flexible premium policies are not as old as the statute, but are not recent develops either. The subject flexible premium policy was issued in 1988. Conseco knew the statutory requirements at the time it issued the policy and those requirements have not changed in the 25 years since. Conseco simply cannot wait until after it

has failed to comply with statutory notice requirements to address the wisdom of LSA-R.S 22:905 through the courts.

3.   <u>Alleged "difficulties" in complying with LSA-R.S. 22:905 do not justify the court's amendment of the statute's clear and unambiguous terms</u>.

ACLI's next argument is that the district court's interpretation should be reversed because it would be "difficult" to meet the statutory requirement of providing notice 15-45 days before the premium becomes due.  Again, an insurer's "difficulty" does not justify ignoring the clear and unambiguous language of a statute that must be strictly construed against the insurer.  The district court was not charged with determining the difficulty, fairness, or policy behind LSA-R.S. 22:905.  It was simply charged with interpreting the plain terms of its provisions and strictly construing those terms in favor of the insured.

Furthermore, in advocating for the insurers, ACLI's representations regarding their purported "difficulty" fail to consider the difficulty the insureds face when their insurance company fails to comply with LSA-R.S. 22:905's requirements.  Instead of receiving notice that gives them a fair opportunity to pay their premium when it comes due, they have no idea when their policy will be depleted and do not receive notice until after the policy has already lapsed and fallen into the grace period.

4.     <u>ACLI concedes that the district court's interpretation is supported by legal authority.</u>

On page 13 of ACLI's brief, it admits that the district court's ruling was supported by the preeminent treatise on insurance law, COUCH ON INSURANCE. By virtue of this admission, ACLI, a leading advocate for the insurance industry, essentially concedes that, at the very least, the terms used by the district court were susceptible to two or more meanings. The rules of strict construction require that such terms be construed in favor of the insured, which the district court correctly did.

5.     <u>ACLI's reliance on a New York statute is unpersuasive.</u>

Finally, ACLI urges the court to take the approach to statutory notice adopted by the State of New York. However, this argument is unpersuasive for several reasons. First and foremost, consideration of this statute was not timely raised below. Instead, this statute was argued for the first time in Conseco's Rule 59(e) motion and the district court declined to consider the untimely argument. As such, it has been waived and should not be considered on appeal.

Furthermore, the New York provisions cited by ACLI were construed by that state's Commissioner of Insurance and then revised by the legislature. While such changes are appropriate for governmental entities and legislative bodies, the same is not true for the role of the court. Obviously, ACLI and its member organizations were successful at convincing the governing authorities of the need

for change in New York.  The decision or failure to do the same in Louisiana simply does not justify court intervention to accomplish their agenda.

## CONCLUSION

The district court's rulings were logically sound, applied the plain meaning of the applicable language, followed the rules of strict construction and should be affirmed.  By definition, a "grace notice" is not sent until after the policy lacks sufficient value to maintain coverage, the premium is past-due, and the policy has lapsed into a "grace period."  As such, it cannot possibly strictly comply with LSA-R.S. 22:905's requirement that notice be provided <u>before</u> the premium is due.  Such an interpretation contradicts the plain meaning of the applicable language, as well as the rules of statutory interpretation and the statute's stated purposed.

Furthermore, the district court did not abuse its discretion in denying Conseco's Rule 59(e) motion to alter or amend the judgment.  Conseco was advancing new arguments that Conseco had not raised in hundreds of pages of briefs and exhibits filed before the court entered its judgment.  Such an attempt to re-litigate the case with new arguments is inappropriate and was properly denied.  Moreover, the court's original judgment was independently sound and should be affirmed.

Respectfully submitted,

HUDSON, POTTS & BERNSTEIN, LLP
1800 Hudson Lane, Suite 300
Post Office Drawer 3008
Monroe, Louisiana 71210-3008
Telephone 318/388-4400; Facsimile 318/322-4194

   */s/ Charles Herold*
CHARLES W. HEROLD, III – Bar No. 17298
G. ADAM COSSEY – Bar No. 31678
Attorneys for Johnston and Johnston

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of April, 2013, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system. Furthermore, an electronic copy of this brief was emailed to all counsel of record.

Thus done and signed this 3rd day of April, 2013.

   */s/ Charles Herold*
Charles W. Herold, III

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(1)(7(B):

- This brief contains 12,511 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

- This brief has been prepared in a proportionally spaced typeface using Word 2010 in 14 point Times New Roman font as permitted by Fifth Circuit Rule 32.1

Dated:        April 3, 2013

___/s/ Charles W. Herold, III_____
Charles W. Herold, III